# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:21-cv-00271-MR

| | |
|---|---|
| **ROMUS ELLIS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| **CAMERON MASSAGEE, et al.,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendants Mickey Beaver, Cameron Massagee, Brandon Bryan, and Christopher Poteat's Motion for Summary Judgment [Doc. 64].

**I.  BACKGROUND**

The pro se Plaintiff Romus Ellis, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 while he was incarcerated in the North Carolina Department of Adult Corrections ("NCDAC").[1]  This action addresses an incident that allegedly occurred at the Alexander Correctional Institution when the Plaintiff was allegedly forced to take unwanted medication.  The verified Complaint was not screened for frivolity because the Plaintiff had

---

[1] The Plaintiff is no longer incarcerated.

attempted to amend in a piecemeal fashion. [Doc. 1: Complaint; Doc. 12: Order denying Motion to Amend]. The Plaintiff was granted the opportunity to amend and the unverified Amended Complaint passed initial review in part. [Doc. 13: Am. Compl.; Doc. 15: Order on Initial Review of Am. Compl.]. The Plaintiff then filed an unverified Second Amended Complaint that passed initial review on claims against Defendants Beaver,[2] Massagee,[3] Bryan,[4] and Poteat[5] in their individual capacities for the use of excessive force/failure to intervene, and for the involuntary administration of medication.[6] [Doc. 18: Second Am. Compl.; Doc. 19: Order on Initial Review of the Second Am. Compl.]. The Court exercised supplemental jurisdiction over the Plaintiff's assault and battery claims against the Defendants under North Carolina law. [Id.]. The Plaintiff seeks a declaratory judgment, injunctive relief, compensatory damages, a jury trial, the costs of this lawsuit, and any other

---

[2] "Correctional Officer Beaver" in the Second Amended Complaint. [Doc. 18 at 3].

[3] "Correctional Officer Masscgee" in the Second Amended Complaint. [Doc. 18 at 2].

[4] "Correctional Officer Jhon Doe" in the Second Amended Complaint. [Doc. 18 at 13].

[5] "Correctional Officer Poteat" in the Second Amended Complaint. [Doc. 18 at 3].

[6] The Second Amended Complaint also passed initial review against Defendants Kenneth E. Gagnon and FNU Stanford; however, these Defendants were dismissed from the action for failure of service. [Docs. 42, 44].

relief that the Court deems just, proper, and equitable. [Doc. 18: Second Am. Compl. at 5].

The Defendants filed the instant Motion for Summary Judgment. [Doc. 64: MSJ]. Thereafter, the Court entered an Order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 67: <u>Roseboro</u> Order]. The Plaintiff has not responded, and the time to do so has expired.[7] This matter is ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

---

[7] The Court will consider the Plaintiff's verified Complaint [Doc. 1] in the summary judgment analysis. <u>See</u> <u>Goodman v. Diggs</u>, 986 F.3d 493, 499 (4th Cir. 2021) ("an amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit at the summary judgment stage"). The Plaintiff's other verified documents and exhibits do not relate to the incidents at issue in this action and, therefore, they will not be addressed. [<u>See, e.g.</u>, Doc. 9: verified Motion for Temporary Restraining Order and Exhibits (addressing alleged retaliation for filing the lawsuit); Doc. 10: verified Motion for Appointment of Counsel; Doc. 11: verified Motion to Amend; Docs. 23, 48: verified Notices of Change of Address].

3

(1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the

4

Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

5

## III. FACTUAL BACKGROUND

The following is a summary of the relevant portions of the undisputed forecast of evidence.

On April 24, 2021, the Plaintiff was incarcerated at the Alexander Correctional Institution where Defendant Beaver was a captain; Defendant Massagee was a sergeant; Defendant Poteat was a lieutenant; and Defendant Bryan was a correctional officer. [Doc. 1: Complaint at 2-3; Doc. 65-3: Bryan Decl. at ¶ 2; Doc. 65-4: Massagee Decl. at ¶ 2].

On the morning of April 24, 2021, the "medication tech"[8] and an unknown officer approached the Plaintiff's cell to provide him with mental health medication. [Doc. 1: Complaint at 2]. Officer Bryan witnessed the Plaintiff swallow a unknown number of pills and state that he wanted to die. [Doc. 65-3: Bryan Decl. at ¶ 3]. The Plaintiff was ordered multiple times to stop swallowing pills but he continued to do so. [Doc. 65-3: Bryan Decl. at ¶ 3]. Officer Bryan administered two short bursts of OC pepper spray to stop the Plaintiff from swallowing more pills and notified the sergeant. [Doc. 65-3: Bryan Decl. at ¶¶ 3, 5].

Sergeant Massagee was informed that the Plaintiff had swallowed an unknown number of pills and that pepper spray had been used in an attempt

---

[8] The "medication tech" is not a defendant in this case.

to stop him from ingesting more pills. [Doc. 65-4: Massagee Decl. at ¶ 3]. When Massagee arrived, the Plaintiff continued to swallow pills and defy orders to submit to restraints. [Doc. 65-4: Massagee Decl. at ¶ 3]. Sergeant Massagee ordered additional pepper spray to be deployed in order to stop the Plaintiff from attempting to take his own life. [Doc. 65-4: Massagee Decl. at ¶¶ 3, 5]. The Plaintiff was again ordered to submit to restraints, and he complied. [Doc. 65-4: Massagee Decl. at ¶ 3; Doc. 65-3: Bryan Decl. at ¶ 4; Doc. 1: Complaint at 2]. The Plaintiff was not violating any prison rule and was not acting disruptively or aggressively while being handcuffed. [Doc. 1: Complaint at 4].

Officer Bryan and Sergeant Massagee escorted the Plaintiff to Lower Red where they placed the Plaintiff in full restraints and assisted staff in securing him. [Doc. 65-3: Bryan Decl. at ¶¶ 4, 6; Doc. 65-4: Massagee Decl. at ¶¶ 4, 6; Doc. 1: Complaint at 2]. Captain Beaver and Lieutenant Poteat were present. [Doc. 1: Complaint at 2]. The Plaintiff told "staff" that he did not want medical treatment, and Captain Beaver gave the order for forced medication to be applied by mouth. [Doc. 1: Complaint at 2]. Medical staff forcibly administered activated charcoal to save the Plaintiff's life. [Doc. 65-3: Bryan Decl. at ¶¶ 4, 6; Doc. 65-4: Massagee Decl. at ¶¶ 4, 6; Doc. 1: Complaint at 2]. The Plaintiff's lip was "busted and scratched," his mouth

was bruised and bleeding, and he received "neck and back injury" in the incident. [Doc. 1: Complaint at 1, 4].

The Plaintiff was sent to the hospital via EMS for further treatment. [Doc. 1: Complaint at 4; Doc. 65-3: Bryan Decl. at ¶ 4; see Doc. 65-2: Medical Records (reflecting Plaintiff's hospitalization for a suicide attempt, having ingested a toxic level of acetaminophen)].

Officer Bryan and Sergeant Massagee used the minimum amount of force necessary during this incident to achieve the correctional objective of saving the Plaintiff's life, and not for the purpose of harming him. [Doc. 65-3: Bryan Decl. at ¶¶ 7-8; Doc. 65-4: Massagee Decl. at ¶¶ 7-8].

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must

8

consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. The Supreme Court has made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The Plaintiff claims that the Defendants violated the Eighth Amendment as follows: Defendant Beaver verbally threatened the Plaintiff

9

would be physically forced to take medication, then gave the order to forcibly medicate him; Poteat blocked the view of the incident through the side door and window; Massagee wrapped his arms around Plaintiff's legs to restrain him; and Bryan pulled Plaintiff's hair to force him back onto the table while medical staff forcibly administered medication. [Doc. 18 at 5]. However, the Plaintiff has not forecast any evidence in support of these claims.

The undisputed forecast of evidence demonstrates that the Plaintiff stated his intent to kill himself; he then swallowed a toxic amount of acetaminophen; that he was pepper sprayed to prevent him from continuing to swallow pills in an attempt to save his life; that he was finally restrained and taken to medical where he was forcibly administered activated charcoal to save his life; and that the minimal amount of force was used to achieve the correctional objective of preserving his life. [See Doc. 65-2: Medical Records; Doc. 65-3: Bryan Decl. at ¶¶ 3-8; Doc. 65-4: Massagee Decl. at ¶¶ 3-8]. There is no forecast of evidence that any Defendant used more force than was reasonably warranted by the Plaintiff's self-injurious behavior, refusal to comply with orders, and refusal of life-saving medication; or that any Defendant failed to intervene to prevent Plaintiff's constitutional rights from being violated. [See id.]. Accordingly, the Defendants' Motion for

Summary Judgment is granted because there is no forecast of evidence that any Defendant violated the Eighth Amendment.

The Court further concludes, after carefully reviewing the Plaintiff's allegations and the parties' forecasts of evidence, that the Plaintiff's claims are frivolous and malicious. See 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1).

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not forecast evidence that any Defendant violated a constitutional right, the Defendants are also entitled qualified immunity and summary judgment is granted on this ground as well.

## C. Supplemental Jurisdiction

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims that were based on the same incidents as § 1983 Eighth Amendment claims that had passed initial review. [See Doc. 18: Order on Initial Review of Second Am. Compl. at 4].

Here, the Plaintiff has failed to forecast any evidence whatsoever in support of his North Carolina assault and battery claims. As discussed *supra*, the related § 1983 claims have been dismissed. The Plaintiff's North Carolina claims based on the same conduct likewise fail. See, e.g., Njang v. Montgomery Cnty., Maryland, 279 F. App'x 209, 216 (4th Cir. 2008) (recognizing that "the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence"); Wilcoxson v. Painter, 2016 WL 866327, at *10 (E.D.N.C. March 3, 2016) ("[w]here a law enforcement officer's use of force was reasonable for the purposes of finding qualified immunity to a § 1983 excessive force claim, it is fatal to the Plaintiff's state law tort claims."). Accordingly, the

Defendants' Motion for Summary Judgment with respect to the Plaintiff's North Carolina assault and battery claims is granted.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, and this action is dismissed with prejudice as frivolous and malicious.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 64] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE AS FRIVOLOUS AND MALICIOUS**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED.**

Signed: February 13, 2024

Martin Reidinger
Chief United States District Judge